
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39637-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSE AGUSTIN SANCHEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Jose Sanchez appeals after a jury found him guilty of second degree rape (forcible compulsion), second degree assault with sexual motivation, and unlawful imprisonment with sexual motivation. He contends the prosecutor committed misconduct several times throughout the trial by (1) improperly commenting on his guilt, (2) discussing facts not in evidence, and (3) by using foul and vulgar language that inflamed the passion of the jury. As a result of the continued misconduct, Sanchez argues cumulative error denied him a fair trial, requiring reversal.

We agree that the prosecutor committed misconduct by referring to facts not in evidence. We also agree that the prosecutor's use of vulgar language during closing argument was unnecessary and unprofessional. Nevertheless, we determine that Sanchez has failed to show prejudice and affirm.

BACKGROUND

In August 2021, A.H. went to the Omak Stampede with a friend. After consuming several drinks throughout the day, she recalled waking up on a couch with Jose Sanchez on top of her. She tried to push him off, while he punched and head-butted her. Over the next several hours, Sanchez continued raping A.H., using both his hands and mouth. A.H. tried resisting by crossing her legs, biting, and scratching Sanchez, but Sanchez held her wrists together with his hands. She explained that this went on from around 8:00 a.m. to 3:00 p.m. although she could not specifically recall the exact timeframe.

At one point, A.H. tried running to the door, but Sanchez grabbed her by her hair and threw her to the ground. Later, she tried to escape again but Sanchez grabbed her and pulled her back inside. She explained that Sanchez would tell her she could leave but then would stop her. He also said he would take her back to the Stampede but then told her he could not find his car keys. After A.H. begged Sanchez to take her back, he agreed but said she would have to have sex with him on camera so that it looked consensual.

Sanchez eventually left to go into his bedroom and A.H. ran out the front door. She arrived at the neighbors' home shaking, terrified, and bruised. She informed them that she had just been beaten and raped. The neighbors took her to the hospital and called the police.

A.H. reported what happened to the police and again to a sexual assault nurse examiner (SANE). Officers recognized Sanchez from A.H.'s description and arrested him.

Sanchez's case proceeded to trial. A DNA technician testified that Sanchez's DNA was found on fingertip swabs from both of A.H.'s hands. Additionally, A.H.'s perineal swab tested positive for saliva.

The technician also testified that DNA can be transferred in two ways. First, transfer occurs by direct contact between the DNA source and the location where the DNA was found. Additionally, low levels of DNA can be transferred through indirect contact where someone has touched something extensively, leaving a lot of DNA, and another person touches that same spot extensively. When asked whether indirect transfer could happen from a toilet seat, the technician testified that this was unlikely but they could not rule it out. On cross-examination, the technician acknowledged that it was possible that saliva could be transferred from a toilet seat if there was direct contact with the perineum.

Deputy Eric Orr testified that when Sanchez was arrested, he told the officers that he had not left his residence since returning home around 1:00 or 1:30 in the morning and that he had been alone.

Sanchez testified and provided a version of events different than what he told police when he was arrested. He testified that he met A.H. previously and then saw her at

the Omak Stampede. Sanchez described how A.H. began following him around and flirting with him. When he indicated he was leaving, A.H. said she wanted to join and the two got in his truck and drove to Sanchez's home.

Sanchez further testified that when they arrived at his house, A.H. got on the counter and the two began kissing. At one point, Sanchez claims he bit A.H. on the chest and she retaliated with a fierce bite that hurt him. At that point, Sanchez decided that they needed to leave. A.H. stumbled and hit her head. When Sanchez noticed a cut near her eye, he put duct tape on it. A.H. then ran around the outside of his house and broke one of his windows. Sanchez indicated that A.H. asked for a ride, and when he refused, she threatened to tell people that he raped her. Sanchez testified that he drank more alcohol and eventually fell asleep. When he awoke, A.H. was in the house demanding that he give her a ride. When he refused, she began screaming and pacing, and eventually left out the back door.

On cross-examination, the State asked Sanchez questions regarding the DNA evidence:

> Q: Okay. And did you have an explanation for how your DNA got under
>    [A.H.]'s fingernails on both hands?
> A: I don't.

Rep. of Proc. (RP) at 336. The court overruled defense counsel's objection to this question based on facts not in evidence.

During closing arguments, the prosecutor recounted A.H.'s testimony, noting that it was "the same story that she told from the very beginning.  It's the story that she told the police.  It's the exact story detail by detail by detail that she told the SANE nurse.  It's the same story that she told in defense interviews."  RP at 382.  Defense counsel objected, arguing that the defense interview was not in the record.  The court sustained the objection and informed the jury to disregard the comment.

The prosecutor then began to discuss the DNA evidence.  In particular, the prosecutor described the male DNA found on A.H.'s "taint" and the saliva on her "taint."  At first, she referred to this as A.H.'s "perineum," but then explained:

> And not to be too crass, but I grew up in Wyoming, and it—that's the little area between—little finger size area on a woman between your vagina and your anus.  We called it "the taint" because it taint this and it taint that.  It's easier for me to call it "the taint."

RP at 387.  After discussing her reason for using the term "taint," the prosecutor went on to discuss the DNA evidence further:

> Can you get a transfer of male DNA from something?  And when I talk about what Mr. Sanchez said—I'll get more into that.  Let's say you're at Stampede and some male spits on the toilet.  Can you sit on that and that's how you get saliva on your taint?  Well, ladies, we all go to the bathroom, right?  Does your taint hit the seat?  No.  Your taint is hanging over the open area.

RP at 387.  Defense counsel objected stating these were facts not in evidence.  The prosecutor responded that she was arguing "common sense."  The court overruled the objection.

5

Toward the end of closing, the prosecutor pointed out that during his testimony Sanchez failed to explain several relevant facts including how A.H. received her bruises. The prosecutor then said "[s]he's here with her father today. The day she testified she didn't even tell him she was going to court because she didn't want him to hear it." RP at 399. Defense counsel objected again stating the facts were not in the evidence, and the court sustained the objection by informing the jury to disregard it.

The State reiterated that Sanchez's story did not line up and that he came into the courtroom "with a fabricated fantasy fable." RP at 400. The defense objected to vouching and a personal opinion. The court overruled the objection, noting it was a comment on the evidence. The State continued:

> He comes in with his fantasy fable. Don't bring the crazy girl home, I guess.
>
> What his story does tell us is he's a little bit twisted, and he likes a good cat and mouse game, and it tells you a little bit about the hell she went through that day. The cat and mouse, he likes to play with his prey.

RP at 400. The prosecutor continued, stating that Sanchez was "blowing smoke up ours." RP at 401. The defense again responded that "permissible argument does not include directly calling any witness a liar." RP at 401. Additionally, the defense stated, "I'm objecting to that and asking for a curative instruction. In fact, it happened twice. I'm asking for a mistrial." RP at 401.

6

The court excused the jury so that the parties could discuss the motion. After hearing from the parties, the court denied the motion. It explained that "the phrase 'liar' was never uttered. The comments were in regards to the testimony at trial, not to Mr. Sanchez personally." RP at 404. Although the motion was denied, the parties agreed to a curative instruction "that the jury is to consider the evidence, [and] that the attorneys' remarks, statements and arguments are not evidence." RP at 404-05.

The jury found Sanchez guilty of second degree rape with forcible compulsion, second degree assault with sexual motivation, and unlawful imprisonment with sexual motivation.

Sanchez appeals.

ANALYSIS

1. PROSECUTORIAL MISCONDUCT

Sanchez contends the prosecutor committed misconduct in three different ways: (1) by providing a personal opinion on guilt, (2) referring to facts not in evidence, and (3) using language to inflame the passion and prejudice of the jury.

*A. Standard of Review*

"Allegations of prosecutorial misconduct are reviewed under an abuse of discretion standard." *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). "To prevail on a claim of prosecutorial misconduct, the defendant must establish 'that the prosecutor's conduct was both [(1)] improper, and [(2)] prejudicial, in the context of the

entire record and circumstances at trial.'" *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (internal quotation marks omitted) (quoting *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). Prejudice exists where "'there is a substantial likelihood the instances of misconduct affected the jury's verdict.'" *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003) (quoting *State v. Pirtle*, 127 Wn.2d 628, 672, 904 P.2d 245 (1995)).

If a "defendant fails to object or request a curative instruction at trial, the issue of misconduct is [considered] waived unless [it] was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice." *Lindsay*, 180 Wn.2d at 430. However, if defense counsel moved for a mistrial due to prosecutorial misconduct following the prosecutor's rebuttal closing argument, the issue may be preserved for appellate review. *Id.* at 430-31. Here, the standard of review differs based on the type of misconduct alleged and whether it was preserved by objection, motion for a mistrial, or if it is considered waived. Each is addressed below.

## B. *Facts Not in Evidence*

Sanchez contends that the prosecutor argued facts not in evidence on multiple occasions: (1) during closing when she stated that A.H.'s story was consistent with defense interviews, (2) during closing when she mentioned A.H.'s father being in the courtroom with her, (3) during closing when she referenced DNA found on A.H.'s "taint," and finally, (4) during cross-examination when she asked Sanchez how his DNA

was under A.H.'s fingernails on both hands. Sanchez objected to each comment and two were overruled while the others were sustained. As a result, the issues are preserved.

A prosecutor generally has "wide latitude during closing argument to draw and express reasonable inferences from the evidence." *State v. Perkins*, 97 Wn. App. 453, 459, 983 P.2d 1177 (1999). However, it is considered "improper for a prosecutor to argue from facts not in evidence." *Id.*

Beginning with the objections that were overruled, Sanchez first contends the prosecutor argued facts not in evidence when she asked him how his DNA got under A.H.'s fingernails. In this instance, the prosecutor was not raising facts that were not in evidence. The DNA evidence had been introduced several times throughout trial. For example, A.H. testified that she scratched Sanchez. Additionally, the DNA technician testified that fingernail clippings and fingertip swabs are sometimes collected as part of a sexual assault kit. Furthermore, the actual DNA evidence in this case consisted of fingertip swabs from both of A.H.'s hands, where Sanchez's DNA was found.

Sanchez acknowledges this evidence but argues that the prosecutor's question was asking Sanchez to speculate because he is not expert on DNA or DNA transfer. This objection overcomplicates that question. Given the testimony already presented, Sanchez did not need to be an expert to explain how his own DNA could be found under A.H.'s fingernails. As such, the prosecutor did not argue facts outside evidence when she referenced the DNA found under A.H.'s nails.

9

Sanchez next argues that the prosecutor argued facts not in evidence when she stated during closing argument, "[w]ell ladies, we all go to the bathroom, right? Does your [perineum] hit the seat? No. Your [perineum] is hanging over the open area." RP at 387. Although crude, this was a commonsense argument based on the technician's testimony that it was possible saliva could be transferred from a toilet seat by direct contact with the area where the saliva was found.

Moving to the objections that were sustained, we agree with Sanchez that the prosecutor twice argued facts not in evidence. First when she argued that A.H.'s story had been consistent and was the same version given to the police, the SANE nurse, and in defense interviews. There was no evidence of defense interviews. The prosecutor again argued facts not in evidence when she stated that A.H. was "here with her father today. The day she testified she didn't even tell him she was going to court because she didn't want him to hear it." RP at 399. There was no evidence concerning the presence of A.H.'s father.

Although Sanchez is correct that the defense interviews were not anywhere in the record, he fails to explain or demonstrate how these comments prejudiced him. *See In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012) (noting that improper conduct must also prejudice defendant by a substantial likelihood it affected the jury verdict). As the State explains, A.H. gave the same account of events to the police,

the SANE nurse, and at trial. Sanchez does not dispute this, only that the jury was unaware of the defense interview.

Sanchez fails to demonstrate two of the comments were improper and for the two that did contain facts outside of the evidence, he fails to demonstrate prejudice.

### C. *Personal Opinion on Guilt*

As an initial matter, Sanchez preserved the issue of misconduct regarding a personal opinion on guilt by moving for a mistrial and by objection. In particular, the defense stated "permissible argument does not include directly calling any witness a liar. And I'm—objecting to that and asking for a curative instruction. In fact, it happened twice. I'm asking for a mistrial." RP at 400-01. Once the jury was excused, defense counsel requested a curative instruction regarding personal opinion of witness testimony.

On appeal, Sanchez contends that the prosecutor was conveying a personal opinion that Sanchez was lying by referring to his testimony as a "fabricated fantasy fable" and that he was "blowing smoke." Br. of Appellant at 11-13.

"It is impermissible for a prosecutor to express a personal opinion as to the credibility of a witness or the guilt of a defendant." *Lindsay*, 180 Wn.2d at 437. However, when a defendant chooses to testify at trial, their credibility may be attacked in the same manner as any other witness. *State v. Stotts*, 26 Wn. App. 2d 154, 171, 527 P.3d 842 (2023). "Where a prosecutor shows that other evidence contradicts a defendant's

11

testimony, the prosecutor may argue that the defendant is lying." *State v. McKenzie*, 157

Wn.2d 44, 59, 134 P.3d 221 (2006).

In order to succeed in showing prosecutorial misconduct for stating a personal

opinion within the context of closing argument, the defendant must show that it was clear

the prosecutor was conveying a personal opinion as opposed to deductions from the

evidence:

> "[i]t is not uncommon for statements to be made in final arguments which,
> standing alone, sound like an expression of personal opinion. However,
> when judged in the light of the total argument, . . . it is usually apparent that
> counsel is trying to convince the jury of certain ultimate facts and
> conclusions to be drawn from the evidence. Prejudicial error does not
> occur until such time as it is *clear and unmistakable that counsel is not
> arguing an inference from the evidence, but is expressing a personal
> opinion*."

*State v. Anderson*, 153 Wn. App. 417, 428, 220 P.3d 1273 (2009) (quoting *McKenzie*,

157 Wn.2d at 53-54).

As this standard emphasizes, it is important to differentiate between an individual

opinion of the prosecutor and an "'opinion based upon or deduced from the testimony in

the case.'" *McKenzie*, 157 Wn.2d at 53 (emphasis omitted) (quoting *State v. Armstrong*,

37 Wash. 51, 54-55, 79 P. 490 (1905)). Therefore, this court must view the challenged

comments in context of the entire argument to determine whether comments were a

personal opinion on guilt or an interpretation of the evidence presented at trial.

Here, Sanchez fails to demonstrate that the prosecutor's argument, that Sanchez testified to a "fantasy fable" about bringing a "crazy girl home," was a clear and unmistakable reflection of the prosecutor's personal opinion. RP at 400. The comments came after the prosecutor reviewed Sanchez's testimony with the jury, arguing Sanchez's version of the events was inconsistent with the other evidence and unbelievable. After pointing out that Sanchez would tell A.H. she could leave but then physically prevent her from leaving, the prosecutor argued that Sanchez's testimony was similarly "blowing smoke" to the jury. These comments do not amount to a personal opinion on guilt.

### D. *Inflame the Passions and Prejudices of the Jury*

Sanchez argues that the prosecutor used arguments to inflame the passions and prejudices of the jury by using animal analogies to say Sanchez was playing a "cat and mouse game" and referring to A.H. as Sanchez's "prey." Br. of Appellant at 16. Furthermore, Sanchez contends the prosecutor used "vulgar" terms by referring to the perineum as the "taint," saying Sanchez had "two big ass bite marks" on him, and referring to a bruise on A.H.'s "butt crack." Br. of Appellant at 17-18. Sanchez did not object to this alleged misconduct and therefore must demonstrate the statements were so flagrant that they caused incurable prejudice; otherwise his arguments are considered waived.

A prosecutor commits misconduct when they use arguments that are "designed to incite the passions or prejudices of the jury." *State v. Zwald*, 32 Wn. App. 2d 62, 75, 555 P.3d 467 (2024). Such arguments "create a danger that the jury may convict for reasons other than the evidence produced at trial." *Id.* at 76.

With respect to arguments that portray animal imagery, context is important because sometimes these arguments are improper, but not always. *In re Pers. Restraint of Richmond*, 16 Wn. App. 2d 751, 754, 482 P.3d 971 (2021). The most obvious problem is that animal analogies may be considered racist sentiments, but not all human-animal comparisons do so. *Id*. at 755. However, it is important to note that there "is no clear prohibition on the use of animal analogies" and that "'it is common for both prosecutors and defense attorneys to make use of analogies in order to help the jury understand the law or the arguments of the parties.'" *Id.* at 756 (quoting *State v. Barajas*, 143 Wn. App. 24, 40, 177 P.3d 106 (2007)).

With these principles in mind, "[u]nless an analogy conveys racist sentiment or is otherwise dehumanizing, we should give breathing room for attorneys." *Id*. "[I]f a particular analogy [seems] ambiguous, our appellate review should be guided by a presumption of good faith." *Id*.

Looking to the analogy at issue, nothing about a cat and mouse portrays a racist sentiment or places it outside the bounds of permissible trial argument. Instead, the argument referenced testimony from A.H. that Sanchez would indicate she could leave

14

the house and then he prevented her from doing so. Other than providing quotes that animal analogies can be problematic, Sanchez does not contend the analogy used here portrayed a racist sentiment. At worst, the analogy was ambiguous, and as such, we presume good faith and do not second guess the proceedings. *See id.* at 757 ("When opposing counsel fails to object to an ambiguous animal analogy, we should be loath to second guess the proceedings and intervene.").

Sanchez next contends the prosecutor committed misconduct by using vulgar terms in closing such as using the word "taint," referring to "two big ass bite marks" on Sanchez, and referring to a bruise on A.H.'s "butt crack." We agree that the use of these terms was unprofessional and disrespectful. Jurors are an integral part of our judicial system and "entitled to the same confidence and respect as that given to a judge." *Coats v. Lee & Eastes, Inc.*, 51 Wn.2d 542, 552, 320 P.2d 292 (1958). We assume that had the prosecutor used the same language in argument to the judge, the court would have admonished her.

Nevertheless, while we agree that the language used was unprofessional, we do not find it likely that the language inflamed the passions or prejudices of the jury, distracted them from the evidence, or otherwise undermined Sanchez's right to a fair trial. While the terms may be considered unprofessional, they were not flagrant and ill

intentioned.  The offensive terms were not directed at any particular witness, attorney, or the defendant.

2.  CUMULATIVE ERROR

Sanchez contends that cumulative error of prosecutorial misconduct denied him a fair trial.  The State contends that most of the prosecutor's comments were proper and for those that were not, no prejudice resulted.

"'The cumulative error doctrine applies where a combination of trial errors denies the accused of a fair trial, even where any one of the errors, taken individually, would be harmless.'" *State v. Azevedo*, 31 Wn. App. 2d 70, 85, 547 P.3d 287 (2024).  Reversal is required where the totality of the circumstances show that the accumulation of errors substantially prejudiced the defendant, denying him or her a fair trial.  *Id*.

Here, the cumulation of errors was not sufficiently prejudicial so as to warrant reversal.  At most, the prosecutor committed misconduct by referring to facts outside of the evidence.  In addition, we consider the prosecutor's improper use of vulgar language during closing.  Sanchez fails to explain how each of these errors prejudiced him, warranting reversal, other than stating "[i]t does not seem as if any one of the errors discussed above or instances of misconduct are harmless in this case."  Br. of Appellant at 19; *see also State v. Teas*, 10 Wn. App. 2d 111, 130-31, 447 P.3d 606 (2019) ("This doctrine does not apply when the defendant fails to establish how the claimed instances

of prosecutorial misconduct affected the outcome of the trial or how combined claims of misconduct affected the outcome of the trial.").

Aside from Sanchez's failure to establish how the claimed instances of misconduct affected the outcome of the trial, the evidence of guilt was overwhelming. *See State v. Meza*, 26 Wn. App. 2d 604, 624, 529 P.3d 398 (2023) (noting that "cumulative error will not require reversal" where "'the evidence is overwhelming against a defendant'") (quoting *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 691, 327 P.3d 660 (2014)).

A.H. provided testimony explaining in detail the events that occurred, including a statement that she scratched Sanchez during the attack. Her testimony was consistent with her prior description of the events. When A.H. ran to the neighbor's home, she immediately told them she had been beaten and raped. She also explained the same story to the nurse during her examination.

Her testimony was also consistent with the physical evidence. The DNA technician testified that the DNA evidence in this case consisted of fingertip swabs from both of A.H.'s hands, where Sanchez's DNA was found. Furthermore, A.H. was covered in bruises on her arms, face, thighs, wrists, ankles, and abdomen, consistent with her testimony of the attack. Based on the evidence presented, Sanchez was not prejudiced by the prosecutor's misconduct. As a result, cumulative error does not warrant reversal.

No. 39637-1-III
*State v. Sanchez*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Cooney, J.