[No. 43737-6-II.   Division Two.   November 4, 2014.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS DEAN ESPEY, *Appellant*.

*Casey Grannis* (of *Nielsen Broman & Koch PLLC*), for appellant.

*Mark E. Lindquist, Prosecuting Attorney*, and *Stephen D. Trinen, Deputy*, for respondent.

¶1 JOHANSON, C.J. — Following three separate trials, Thomas Espey appeals from his jury convictions for first degree burglary (count II),[1] first degree unlawful possession of a firearm (count III),[2] and unlawful possession of a controlled substance (count V).[3] He argues that (1) the vehicle search warrant lacked probable cause, (2) the prosecutor improperly relied on Espey's silence and his consultation with an attorney as substantive evidence of guilt, and (3) the trial court violated his public trial rights. In his statement of additional grounds, he further argues that the evidence was insufficient to sustain his conviction for first degree burglary.

¶2 In the published portion of the opinion, we agree with Espey that the State improperly commented on Espey's constitutional right to counsel by relying on his consultation with an attorney to discredit him and, accordingly, we reverse his first degree burglary conviction (count II). In the unpublished portion of this opinion, we agree with Espey that the State violated his constitutional protection against unreasonable search and seizure and we reverse his first degree unlawful possession of a firearm conviction (count III) and unlawful possession of a controlled substance conviction (count V). In addition, we reject Espey's insufficiency of the evidence contention as to count II and we do not reach Espey's public trial or right to silence arguments. We reverse and remand count II for retrial, and reverse and dismiss counts III and V.

---

[1] RCW 9A.52.020(1)(b).

[2] RCW 9.41.040(1)(a).

[3] Former RCW 69.50.4013(1) (2003).

## FACTS

¶3 In April 2011, Espey, Mario Falsetta, and two unidentified men entered the home of Sonny Campbell. Espey told Campbell, " 'You know why I'm here. You know what time it is.' " Report of Proceedings (RP) (Mar. 19, 2012) at 23. He then put on a pair of gloves and grabbed Campbell by the collar. Campbell fell into his bathtub, where three of the four men began to beat him. During the beating, Campbell's assailants accused him of drugging and raping Katie Bass, a mutual acquaintance of Campbell and Espey. The bathroom was crowded and the men took turns hitting Campbell. Espey threw a punch "here and there." RP (Mar. 19, 2012) at 25.

¶4 During the assault, Falsetta broke into the bedroom where Campbell's girlfriend, Kimberly Bischof, was hiding. Falsetta took a cell phone and a bag containing money and drugs from the bedroom; one of the unidentified men took a paintball gun. In addition, a laptop computer and various pieces of jewelry were stolen. Finally, Espey and his three accomplices departed in a truck. Campbell was left with injuries to his head and neck.

¶5 Campbell contacted the police, identifying Espey as the " 'ringleader' of the incident." Clerk's Papers (CP) at 22. The State obtained an arrest warrant for Espey. Detective Jason Laliberte of the Pierce County Sheriff's Department spent a month and a half attempting to serve the arrest warrant, during which period he attempted to contact Espey approximately 25 times. The search for Espey was particularly difficult because Espey was aware the police were looking for him and took "extreme measures to elude capture . . . by distancing himself from co-participants in this case and avoiding areas of which he [was] known to frequent." CP at 22. During this time, Espey spoke to Falsetta's attorney, Chip Mosley, who checked for outstanding warrants for Espey. Espey also spoke to an attorney

named Gary Clower, who advised him to make a video statement and then turn himself in to police. Espey did not follow this advice and did not retain Clower.

¶6 On May 25, 2011, police located Espey driving a Cadillac registered to another person. Police followed Espey to a casino where he retrieved a shirt from the Cadillac's trunk. Police continued to follow Espey as he drove to a gas station to use the bathroom, at which point they arrested him. Espey agreed to a recorded interview with police during which he stated that he had gone to Campbell's house by himself, he was there only to discuss Bass, he had been invited inside, he had not hit Campbell, and he had not taken anything.

¶7 The Pierce County Prosecuting Attorney's Office charged Espey with five counts: first degree robbery (count I),[4] first degree burglary (count II),[5] first degree unlawful possession of a firearm (count III),[6] possession of a stolen firearm (count IV),[7] and unlawful possession of a controlled substance (count V).[8] Espey had three separate jury trials. At the first trial, he was convicted of unlawful possession of a controlled substance (count V). At the second trial, he was convicted of first degree burglary (count II). At the third trial, he was convicted of first degree unlawful possession of a firearm (count III). He alleges error in each trial.

¶8 At the second trial, the prosecutor argued in closing that the jury should consider Espey's statement to police in light of the time he had spent in flight and his consultation with attorneys:

> Where I suggest you start is, start with his own recorded statement that he gave to the police. Keep in mind that he had

---

[4] RCW 9A.56.190, .200(1)(a)(iii).

[5] RCW 9A.52.020(1)(b).

[6] RCW 9.41.040(1)(a).

[7] RCW 9A.56.140(1), .310(1).

[8] Former RCW 69.50.4013(1).

been on the run for approximately six weeks. Keep in mind that he had already consulted with two attorneys, Chip Mosley and Gary Clower. He had lots of time to figure out what story he was going to tell the police.

If you have ever dealt with somebody who is a good liar, they have a pattern. What they do is this: Admit everything that you can't [sic] admit without getting into trouble and only deny the stuff that you have to. . . .

You heard Tom Espey's story in there. I'm not guilty of burglary because I was invited into the house. I'm free. You can't get me guys. I'm not guilty of robbery because I didn't personally take anything. I'm free. Okay, I did everything else, but guess what? You can't touch me. And he is wrong. He is wrong because it [sic] doesn't understand what it means to be an accomplice. He doesn't understand what accomplice liability means.

RP (Mar. 20, 2012) at 27-28. The prosecutor reiterated that "[he] talked to the lawyers, Mosley and Clower. He told them why he went [to Campbell's home]. He didn't deny going." RP (Mar. 20, 2012) at 28. Espey did not object at any time during closing.

¶9 Juries convicted Espey of count V (unlawful possession of a controlled substance) in the first trial, count II (first degree burglary) in the second trial, and count III (unlawful possession of a firearm) in the third trial.[9] He timely appealed.

## ANALYSIS

### IMPROPER COMMENT ON RIGHT TO COUNSEL

¶10 Espey alleges that during the second trial, the prosecutor's closing argument improperly relied on the fact that Espey consulted with two attorneys during his flight. Espey also argues that the prosecutor violated his state and

---

[9] The second jury acquitted Espey on count I (first degree robbery). The court dismissed count IV (possession of a stolen firearm) on Espey's motion.

federal constitutional right to counsel. We agree that the prosecutor improperly commented on Espey's right to counsel and that this error was not harmless. Accordingly, we reverse Espey's first degree burglary conviction.[10]

## A. WAIVER

¶11 As a threshold matter, we must determine whether Espey waived his argument here by failing to object at trial to the prosecutor's comments or to request a curative instruction. If the defendant did not object at trial, the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *State v. Stenson*, 132 Wn.2d 668, 726-27, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). Under this heightened standard, the defendant must show that (1) "no curative instruction would have obviated any prejudicial effect on the jury" and (2) the misconduct resulted in prejudice that "had a substantial likelihood of affecting the jury verdict." *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011). A defendant's failure to object to an improper remark on his constitutional right to silence does not waive the issue on appeal so long as the remark amounts to a manifest error. *See* RAP 2.5(a)(3).

¶12 Having failed to object at trial or request a curative instruction, Espey has waived the error unless we find the prosecutor's comments " 'so flagrant and ill-intentioned' " that no instruction could have cured the resulting prejudice. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006) (quoting *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997)). In making this determination, the courts are to "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012).

---

[10] Accordingly, we do not address Espey's arguments concerning his right to remain silent.

¶13 In order to determine waiver we must first analyze the prejudice Espey suffered, and therefore we must preview the merits of Espey's claim.

■ ¶14 A defendant has a right to counsel under the state and federal constitutions. *See* U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. Several federal courts have held that a prosecutor violates this right by using "an accused's decision to meet with counsel, even shortly after the incident giving rise to a criminal indictment," to imply guilt or suggest that the defendant hired an attorney to concoct an alibi.[11] *Sizemore v. Fletcher*, 921 F.2d 667, 671 (6th Cir. 1990). No prosecutor may employ language that denigrates the right of a criminal defendant to retain the counsel of his choice or otherwise limits the fundamental due process right of an accused to present a vigorous defense. *Sizemore*, 921 F.2d at 671; *see also United States v. McDonald*, 620 F.2d 559, 562-64 (5th Cir. 1980); *United States ex rel. Macon v. Yeager*, 476 F.2d 613, 615 (3d Cir.), *cert. denied*, 414 U.S. 855 (1973).

¶15 We agree with the reasoning of these decisions. The State "strike[s] at the core of the right to counsel" when it seeks to create an inference of guilt out of a defendant's decision to meet with counsel, even if the defendant meets with counsel shortly after the alleged crime takes place. *Sizemore*, 921 F.2d at 671. That is precisely what the State did when it argued that Espey's meetings with attorneys helped him to formulate the account he gave to police upon arrest. *See* RP (Mar. 20, 2012) at 27 ("Keep in mind he had already consulted with two attorneys, Chip Mosley and Gary Clower. He had lots of time to figure out what story he was going to tell the police."). That is, the State argued that because Espey exercised his constitutional right to counsel,

---

[11] While no Washington Supreme Court authority is directly on point, our Supreme Court discussed prosecutorial comment on the right to counsel in *State v. Yates*, 161 Wn.2d 714, 779, 168 P.3d 359 (2007), *cert. denied*, 554 U.S. 922 (2008). Although the court did not hold that Yates's right to counsel had been violated, it recognized the possibility of an improper inference "that, because he had counsel, he was guilty." *Yates*, 161 Wn.2d at 779.

he was lying. The State thereby improperly commented on and penalized Espey's exercise of the right to counsel, a right guaranteed by the state and federal constitutions. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *see also Sizemore*, 921 F.2d at 671; *McDonald*, 620 F.2d at 562-64; *Macon*, 476 F.2d at 615.

¶16 This error was both incurable and substantially likely to affect the jury verdict because it attacked Espey's credibility, which was the dispositive question in this case. The State's evidence consisted of (1) Espey's statement to police in which he admitted entering Campbell's home and grabbing him, (2) testimonial and photographic evidence of Campbell's injuries, and (3) the testimony of both Campbell and Bischof, who stated that Espey and three others entered their home without announcing themselves or asking for permission. Campbell and Bischof further testified that Espey and the three other intruders had come into the home together and left together in Espey's truck. Both witnesses identified Espey and Falsetta as the leaders of the group, stating that the other men "were just duck and dive or dodge," RP (Mar. 19, 2012) at 27, and were "tagging along or something. . . . It didn't seem like they knew what they were doing." RP (Mar. 19, 2012) at 64.

¶17 On the other hand, Espey presented the testimony of Campbell's then-roommate Donny Resnick, who testified that Campbell invited Espey's group in, that he had not seen or heard any fighting, and that Espey's group was not carrying anything when they left. Espey also pointed to his own prior statement where he claimed he had not intended to rob Campbell, only to talk with him. In the same statement, Espey emphasized that his accomplices acted on their own and that he did not even know anything had been stolen until a couple days later.

¶18 Aside from the photographs of Campbell's injuries, the only evidence either side presented was testimonial. Therefore, the entire trial turned on a determination of credibility: whether Campbell and Bischof were telling the

truth or rather Resnick and Espey were.[12] The prosecution's comments, brief as they were, were designed to weigh on that exact question by framing Espey's story as false or at least incomplete. RP (Mar. 20, 2012) at 27 ("If you have ever dealt with somebody who is a good liar, they have a pattern. What they do is this: Admit everything that you can't [sic] admit without getting into trouble and only deny the stuff that you have to."). The prosecution created an inference that Espey was lying because he consulted with attorneys, and this improper inference went to the central issue of the case. In the specific circumstances of this case, we find that the prosecutor's remarks were too prejudicial to be remedied by a curative instruction and had a substantial likelihood of affecting the jury verdict. Accordingly, Espey has not waived the issue and we proceed to the merits.

## B. Not Harmless Error

¶19 As we note above, the State improperly commented on Espey's right to counsel by urging the jury to conclude that Espey was lying because he had met with an attorney. But the question remains whether the error was harmless. When a prosecutor's improper argument directly violates a constitutional right, we apply the constitutional harmless error standard. *See, e.g.*, *State v. Easter*, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996) (prosecutor commented on defendant's prearrest silence); *State v. Fricks*, 91 Wn.2d 391, 396-97, 588 P.2d 1328 (1979) (prosecutor com-

---

[12] The State argued that the jury could convict Espey even if it believed his story—Espey said he had not personally taken anything but even if that were true, he would still be liable as an accomplice. *See* RP (Mar. 20, 2012) at 30 ("When you look at Sunny [sic] Campbell's testimony and Kimberly Bischof's testimony, their testimonies don't really differ that much with what Mr. Espey, himself, has to say."). But Espey's account differed from Campbell's in important ways. Espey told the police that he was invited into Campbell's home, while Campbell testified that Espey's group walked directly in without permission. Espey told the police that he was "by [himself] in [his] truck," Ex. C at 13, while Campbell testified that Espey and the three other men left together in Espey's truck.

mented on defendant's postarrest silence).[13] "A constitutional error is harmless only if the reviewing court is convinced beyond a reasonable doubt that any reasonable jury would reach the same result absent the error and where the untainted evidence is so overwhelming it necessarily leads to a finding of guilt." *State v. Burke*, 163 Wn.2d 204, 222, 181 P.3d 1 (2008) (citing *Easter*, 130 Wn.2d at 242). Because the prosecutor's closing argument constituted an impermissible comment on Espey's exercise of a constitutional right, the State bears the burden of showing the error was harmless. *Easter*, 130 Wn.2d at 242.

¶20 Under these facts, the State fails to carry its heavy burden of showing the error was harmless. As described above, Espey's credibility was the central issue in this case, where the jury was offered a choice between two versions of events: Campbell and Bischof's, or Espey and Resnick's. Again, the State's comments on Espey's meetings with counsel were designed to discredit Espey and Resnick's story. *See* RP (Mar. 20, 2012) at 27 ("Keep in mind he had already consulted with two attorneys, Chip Mosley and Gary Clower. He had lots of time to figure out what story he was going to tell the police."). But even after taking the prosecution's comments into consideration, the jury acquitted Espey of assault, which indicates that the jury may not have believed *everything* Campbell and Bischof said. Absent the prosecution's improper reliance on Espey's meetings with counsel, there is a reasonable doubt that the jury may have reached a different result. Accordingly, we reverse the guilty verdict on the charge of first degree burglary (count II) and remand for a new trial.

¶21 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder

[13] Our analysis is different when the prosecutor only indirectly violates a constitutional right, such as by misstating the State's burden of proof. *Emery*, 174 Wn.2d at 757-58; *State v. Warren*, 165 Wn.2d 17, 26 n.3, 195 P.3d 940 (2008), *cert. denied*, 556 U.S. 1192 (2009).

shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

WORSWICK and MELNICK, JJ., concur.