# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

RICHARD JAY SANDERS,

Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

No. 71959-9-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: September 28, 2015

APPELWICK, J. — Sanders appeals his conviction for attempting to elude a pursuing police vehicle. He contends the prosecutor made an improper comment during closing argument at trial that had a substantial likelihood of affecting the jury's verdict. We affirm.

## FACTS

On December 2, 2013, Deputy George Ratayczak and Deputy Joseph Anders were dispatched around midnight to a loud house party. The reporting caller complained of loud noise and disorderly people. Deputy Anders arrived at the residence first. Deputy Anders parked his marked police car about three houses away from the identified residence and waited for Deputy Ratayczak to arrive.

While Deputy Anders waited, he got out of his car and began walking toward the house. As he did, he heard an engine start near the house. Consequently, he got back into his patrol car, turned on the car, and waited to see if the person leaving the party was an individual he needed to contact. A couple minutes later, a pickup truck approached the end of the house's driveway. Before the truck entered the street, Deputy Anders saw the headlights go out, and saw the truck reversing quickly back up the driveway. After surmising that the driver of the truck had seen him, Deputy Anders

activated his lights and pulled into the driveway—face to face with the truck. With the police car's spotlight pointed on the pickup truck, Deputy Anders recognized the driver of the truck as Richard Sanders. Deputy Anders had had previous encounters with Sanders.

Deputy Anders got out of his car, and yelled at the driver to stop the vehicle. Deputy Anders asked the driver to stop the truck, because he knew that Sanders had a warrant for his arrest. Instead of stopping the vehicle, the driver drove the truck across the front lawn of the house, through a small ditch, and out onto the road.

At that point, Deputy Ratayczak had just arrived. Deputy Anders advised him via radio to follow the truck. Deputy Ratayczak began following the truck, and activated his lights and sirens. Deputy Anders eventually caught up with the pursuit. Both deputies pursued the truck, but eventually lost sight of it and were unable to locate it or the driver.

Sanders was eventually located and arrested on December 7, 2013. On December 11, 2013, Sanders was charged with attempting to elude a pursuing police vehicle. Sanders pleaded not guilty. At trial, Sanders testified that although he purchased the pickup truck, someone stole the truck on October 28, 2013. He testified that he had not seen or driven the truck since that date. Sanders denied driving the truck and denied eluding the police.

A jury convicted Sanders as charged. Sanders appeals the judgment and sentence.

## DISCUSSION

Sanders argues that the prosecutor engaged in misconduct during closing argument and deprived him of his constitutional right to a fair trial. Specifically, he

2

argues that the prosecutor misstated the State's burden of proving guilt beyond a reasonable doubt. He contends that this misstatement requires reversal of his conviction, because it had a substantial likelihood of affecting the jury's verdict.

Prosecutorial misconduct may deprive a defendant of his right to a fair trial. State v. Davenport, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984). An appellant claiming prosecutorial misconduct must show both improper conduct and resulting prejudice. State v. Walker, 164 Wn. App. 724, 729, 265 P.3d 191 (2011), affirmed on remand, 2013 WL 703974. Prejudice exists only where there is a substantial likelihood the misconduct affected the jury's verdict. Id. A prosecutor's comments during closing argument are reviewed in context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. Id.

Sanders contends that one comment made by the prosecutor during closing argument constituted prosecutorial misconduct:

> What about the Defendant's testimony, is it reasonable? That's what we're talking about. We're talking about reasonable doubt. Is the Defendant's testimony, is the Defendant's explanation of what he was doing reasonable?

Sanders immediately objected stating, "Your honor, I think that misstates the reasonable doubt standard." The trial court responded, "The jury will follow the instruction as to the definition of reasonable doubt." The prosecutor continued:

> I submit to you it's not reasonable, and this is a reasonable doubt instruction. That's Instruction Number 4, and that is obviously correct what the judge says, you're to follow the jury instructions, not my argument.

The prosecutor then recited part of the reasonable doubt standard from the jury instructions verbatim.

3

In determining whether prosecutorial misconduct occurred, we first evaluate whether the prosecutor's comments were improper. State v. Reed, 102 Wn.2d 140, 145, 684 P.2d 699 (1984). Sanders argues that the prosecutor's comments were improper, because in making this statement about reasonableness in his closing argument, he misstated the State's burden to prove his guilt beyond a reasonable doubt.

Reviewing the prosecutor's comment in context, the prosecutor was questioning the reasonableness of Sanders' testimony, because Sanders' defense was largely based on credibility—his testimony versus Deputy Anders' testimony about whether Sanders was the driver of the truck.[1] Specifically, Sanders testified that it was not him driving the truck on the night of the incident, because his truck had been previously stolen—testimony that directly contradicted Deputy Anders' testimony and identification. To the extent the prosecutor was merely commenting upon the quality of the evidence provided by the defense, the comment was not improper. See State v. Gregory, 158 Wn.2d 759, 860, 147 P.3d 1201 (2006) (commenting about the quality of the evidence presented by the defense does not necessarily suggest that the burden of proof rests with the defense), overruled on other grounds by State v. W.R., 181 Wn.2d 757, 336 P.3d 1134 (2014).

But, Sanders argues that the prosecutor's comment was more than just a commentary on the quality of the evidence. He argues that the prosecutor's comment, "diminished the State's burden of proof substantially by equating a simple reasonable standard with the beyond a reasonable doubt standard." Sanders contends that the

---

[1] Deputy Ratayczak testified that he could not see the driver of the truck.

4

prosecutor was implying that by finding Sanders' testimony unreasonable, the State had necessarily proved its case beyond a reasonable doubt.

Sanders relies on State v. Anderson, 153 Wn. App. 417, 431, 220 P.3d 1273 (2009) and State v. Venegas, 155 Wn. App. 507, 523, 228 P.3d 813 (2010) for his assertions. In both Anderson and Venegas, during closing argument, the prosecutor tasked the jury with providing a specific reason for why the defendant was not guilty. Anderson, 153 Wn. App. at 431; Venegas, 155 Wn. App. at 523.

In Anderson, the prosecutor argued to the jury that, " 'in order to find the defendant not guilty, you have to say, "I don't believe the defendant is guilty because," and then you have to fill in the blank.'" 153 Wn. App. at 424. The Anderson court concluded that this statement was improper. Id. at 431. It reasoned that by implying that the jury had to find a reason in order to find Anderson not guilty, the prosecutor made it seem as though the jury had to find the defendant guilty unless it could come up with a reason not to. Id. It classified the prosecutor's statement as creating an initial affirmative duty to convict, and reasoned that this was improper because of the defendant's presumption of innocence. Id. Moreover, it reasoned that the prosecutor's statement improperly shifted the burden of proof by placing the onus on Anderson to provide a reason to the jury for why he was not guilty. Id.

Similarly, in Venegas, the prosecutor stated, " 'In order to find the defendant not guilty, you have to say to yourselves: "I doubt the defendant is guilty, and my reason is—blank." ' " 155 Wn. App. at 523. Relying on its recent decision in Anderson, the court concluded that in employing an improper " 'fill-in-the-blank' " argument, the prosecutor risked reversal of its conviction. Id. at 523-24.

5

Sanders argues that the prosecutor's comment here was no less insidious than the fill-in-the-blank arguments that diminished the State's burden of proof in Anderson and Venegas. We disagree with that characterization. But, to the extent the prosecutor's comment could be interpreted as diminishing the State's burden of proof by conflating the reasonable doubt standard with whether one witness's testimony is reasonable, the comment would be improper.

Assuming without deciding that the prosecutor's statement was improper, Sanders must still show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). Sanders argues that the prosecutor's statement had a substantial likelihood of affecting the jury's verdict, because the critical issue for the jury was the credibility of the witnesses. He claims that errors involving witness credibility are substantially likely to affect the jury verdict. Sanders relies on State v. Espey, 184 Wn. App. 360, 336 P.3d 1178 (2014) for this assertion. Sanders relies on one particular statement from Espey: "This error was both incurable and substantially likely to affect the jury verdict because it attacked Espey's credibility, which was dispositive in this case." Id. at 368.

But, Espey is distinguishable. The prosecutorial misconduct challenge in Espey related to an improper argument made during closing argument that implicated the defendant's constitutional right to counsel.[2] Id. at 367-68. The prosecutor commented

---

[2] It is also worth noting that the Espey court was tasked with performing its analysis under a different standard than the standard in this case. First, in Espey, the defendant did not object to the prosecutor's comments at trial and thus had to show that he did not waive his argument on appeal by failing to object below. 184 Wn. App. at 366. As such, the defendant had to show that the prosecutor's misconduct was so

on the fact that the defendant consulted with attorneys and had time to figure out what story to tell the police. Id. at 367. In concluding that the prosecutor's comment was improper, the Espey court reasoned that the prosecutor's comment was akin to saying that because the defendant exercised his constitutional right to counsel, he was lying. Id. at 367-68. The Espey court did not conclude that any time and in any context a prosecutor makes a comment questioning the defendant's credibility that it is per se prejudicial and substantially likely to affect the jury's verdict. Rather, the court concluded that the comments were too prejudicial in the specific circumstances of that case—when the prosecutor's comments called the defendant's credibility into question because of his or her decision to exercise the right to counsel. Id. at 369.

Moreover, even if the prosecutor's isolated comment was improper, Sanders immediately objected to the comment during closing argument. And, the trial court told the jury that it was to follow the jury instructions as to the definition of reasonable doubt. The prosecutor then recited the reasonable doubt standard from the jury instructions. Examining the prosecutor's single comment in the context of a jury instruction that clearly defined the proper reasonable doubt standard—a jury instruction that was emphasized by both the prosecutor and the trial court—we conclude that Sanders has not demonstrated that there is a substantial likelihood that this alleged misconduct

---

flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. Id. The defendant had to do so by showing that (1) no curative instruction would have obviated any prejudicial effect on the jury and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury verdict. Id. Therefore, the Espey court considered the "substantially affects the jury verdict" standard in the context of determining waiver. And, once the Espey court concluded that the defendant had not waived the issue, because this was an alleged constitutional harm, the court ultimately analyzed the prosecutorial misconduct challenge under the constitutional harmless error test. Id. at 369.

7

affected the verdict.  See State v. Hopson, 113 Wn.2d 273, 287, 778 P.2d 1014 (1989)

(presuming that the jury follows the trial court's instructions).

We affirm.

Appelwick, J.

WE CONCUR:

Trickey, J          Becker, J.