# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>     Respondent,<br><br>    v.<br><br>EDWARD LEROY CARTE, JR.,<br><br>     Appellant. | No. 83589-1-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

MANN, J. — Edward Carte Jr. appeals his conviction for two counts of second degree assault and felony harassment. Carte's primary argument is that the prosecutor improperly presented a "generic tailoring" argument—inviting the jury to draw an adverse inference based on Carte's constitutional right to appear and defend himself at trial. We agree that the prosecutor committed error by making a tailoring argument untethered to Carte's prior statements or testimony. But because Carte failed to object, and fails to demonstrate that the error was flagrant, ill intentioned, and uncurable, this argument is waived.

Carte also argues that the trial court erred in excluding several statements as hearsay, improperly admitted the victim's hearsay statement as an excited utterance, and that cumulative error deprived him of a fair trial. We disagree and affirm.

-1-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

I.

Morgan Cooper-McWade is a single mother of two young children, M.C. and C.W.  Cooper-McWade worked several jobs and struggled financially.  Cooper-McWade met Carte through Facebook after he sent her a friend request.  They eventually met in person and began seeing each other daily.  At the time, Carte was living in a group home for recovering addicts.

Carte was at first "really supportive" of Cooper-McWade, assuring her that "[h]e could make the money problems go away . . . [and] help with the kids."  Carte moved into Cooper-McWade's home soon after.  Although Cooper-McWade had reservations about the relationship, she also "needed the help . . . badly."

Carte helped with childcare, but his promises of financial support were exaggerated.  The relationship quickly deteriorated and they were soon having "a lot of really explosive fights."  Carte was jealous and accused Cooper-McWade of having "something going on with somebody somewhere."

1.  October 8, 2020.

On October 8, 2020, Cooper-McWade was scheduled to work until 9 p.m. while Carte watched her children.  The pair fought throughout the day and the argument continued by text message while Cooper-McWade was at work.  Cooper-McWade left work early when Carte sent her a text message that implied he was suicidal and had overdosed on prescription drugs.

When Cooper-McWade returned home she found Carte intoxicated and her children asleep in their room.  When Cooper-McWade texted a friend about the situation, Carte demanded to know who she was texting and wrestled the phone away

No. 83589-1-I/3

from her. When Cooper-McWade refused to unlock her phone, Carte commanded her to "[p]ack [his] shit," and then "pulled [her] up by [her] neck and pushed [her] towards the [bed]room to start packing his belongings."

Carte then began throwing his belongings at Cooper-McWade and repeatedly kicked and shoved her. Carte told Cooper-McWade that she made him angry and grabbed her by the neck. Carte laughed as Cooper-McWade, unable to breathe, tried to pry his hand off. Carte eventually released Cooper-McWade's neck and she went back to packing his things. Carte continued to verbally abuse Cooper-McWade throughout the evening, and a cycle of verbal abuse and choking continued around 5 to 10 times over the course of several hours. Each time Carte would strangle Cooper-McWade until she became "really frantic," and then he would release her before she lost consciousness. Carte told Cooper-McWade that he would kill her if she called the police. Cooper-McWade believed that Carte would kill her.

When Carte fell asleep, Cooper-McWade discreetly retrieved her phone and went to sleep in her children's room. She did not call the police because she stated she was afraid of what Carte might do. The next morning, Carte acted like nothing happened and told Cooper-McWade to just "forget about last night." Cooper-McWade left with her children and texted Carte to move out. She returned later with a male friend for protection.

The State charged Carte with second degree assault (count 1) and felony harassment (count 2) based on these events.

2. November 17, 2020.

Carte did not move back in with Cooper-McWade, but he would often spend time at her house to "try to fix things and hang out to make things better." At the time, Cooper-McWade had a close friend named Luciana Argueta. Carte was extremely jealous of Argueta, and because she was a lesbian, believed Cooper-McWade was cheating on him with her.

On November 17, 2020, Carte became irate after discovering Cooper-McWade texting with Argueta. Carte grabbed Cooper-McWade's phone and spat in her face several times. Carte also verbally abused Cooper-McWade calling her various names before leaving. Cooper-McWade called 911 and responding police arrived shortly after. Cooper-McWade was crying and appeared very frightened.

The State charged Carte with fourth degree assault (count 4) based on this event.

3. November 30, 2020.

Cooper-McWade and Argueta began a short romantic relationship in mid-November. The pair ceased seeing each other on November 24 after Argueta allegedly robbed and assaulted Cooper-McWade. Cooper-McWade reached out to confide in Carte. He moved back in shortly after. Despite the alleged assault, Cooper-McWade began speaking to Argueta again as well.

On November 30, Carte became "extremely upset" after finding Cooper-McWade on the phone with Argueta. Cooper-McWade hung up quickly, yet Carte grabbed the phone from her and demanded to know who she was talking to. Cooper-McWade refused to unlock her phone and Carte "dragged" her into the bedroom by her neck.

Carte began strangling Cooper-McWade with both hands. Cooper-McWade could not breathe and began "seeing stars." As he had done previously, Carte strangled her for a few seconds at a time, just "enough for [her] to panic." Cooper-McWade called out for her child, C.W., to help her during the incident. C.W. was woken by Cooper-McWade shouting his name and he recalled hearing "loud noises" and Cooper-McWade "saying stop."

Carte briefly calmed down and returned Cooper-McWade's phone. She left the bedroom and gave her phone to C.W., instructing him to hide and call for help. Carte reengaged with Cooper-McWade shortly after. C.W. hid in the laundry room and called 911.

C.W. told the 911 dispatcher that he needed help because "my mom's boyfriend is hitting my mom." Cooper-McWade and Carte could be heard arguing in the background, and Cooper-McWade could be heard crying in pain at one point. C.W. then told the dispatcher that he "can't talk" and hung up. Carte left the house after discovering that C.W. called 911. Several police officers responded to C.W.'s 911 call, forcing the front door open when nobody answered. Cooper-McWade and C.W. emerged from hiding in a back closet.

The police officers immediately saw that Cooper-McWade "had a very large black eye . . . and . . . various different red marks around her neck and on the side of her face." There were "little red marks" on Cooper-McWade's chest and what looked like a thumbprint on her chin. She identified several injuries inflicted by Carte and explained that many facial marks were caused by Argueta's earlier assault.

The State charged Carte with second degree assault (count 3) based on this event.

A jury convicted Carte of second degree assault and felony harassment based on the October 8 incident, and second degree assault based on the November 30 incident. Carte was acquitted of fourth degree assault based on the November 17 incident.

Carte appeals.

II.

Under both the United States and Washington Constitutions, a defendant has the right to "appear and defend in person," to testify on their own behalf, and to confront witnesses against them. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22.[1] Carte argues that the prosecution violated his constitutional rights during closing argument by inviting the jury to draw an adverse inference from his appearance at trial—specifically that Carte tailored his testimony based solely on his presence throughout the trial.

We agree that the prosecution committed error by making a tailoring argument untethered to Carte's prior statements or testimony. But because Carte failed to object, and fails to demonstrate that the error was flagrant, ill intentioned, and uncurable, this argument is waived.

---

[1] The Sixth Amendment of the United States Constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The confrontation clause includes the right to be present at trial. Illinois v. Allen, 397 U.S. 337, 338, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970). Article I, section 22 of the Washington Constitution provides in pertinent part: "In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to meet the witnesses against him face to face."

No. 83589-1-I/7

A.

To establish prosecutorial misconduct during closing argument, a defendant bears the burden of proving that the prosecutor's statements were both improper and prejudicial. State v. Allen, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). We consider the prosecutor's conduct in the context of the record and the circumstances at trial. State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011).

We determine whether the defendant was prejudiced under one of two standards of review. State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). If the defendant made a timely objection at trial, he must demonstrate that any improper conduct "resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." Allen, 182 Wn.2d at 375. When a defendant fails to object at trial, however, "the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." Emery, 174 Wn.2d at 760-61. To prevail under this heightened standard, the defendant must show that (1) no curative instruction could have eliminated the prejudicial effect and (2) there was a substantial likelihood the misconduct resulted in prejudice that affected the jury verdict. Emery, 174 Wn.2d at 761.

B.

A claim of "tailoring" alleges that the defendant conformed their testimony to the evidence they observed while attending trial. State v. Hilton, 164 Wn. App. 81, 93, 261 P.3d 683 (2011). Tailoring arguments are considered "specific" if derived from the defendant's actual testimony, including both direct testimony and cross-examination. State v. Berube, 171 Wn. App. 103, 115-17, 286 P.3d 402 (2012). Tailoring arguments

-7-

No. 83589-1-I/8

are considered "generic," however, if based solely on the defendant's presence at the proceeding and not based on the defendant's direct examination or cross-examination. Berube, 171 Wn. App. at 115.

In Portuondo v. Agard, 529 U.S. 61, 73, 120 S. Ct. 1119, 146 L. Ed. 2d 47 (2000), a majority of the U.S. Supreme Court held that tailoring arguments did not violate a defendant's Sixth Amendment right to be present at trial. Justice Ginsburg dissented, arguing that any tailoring allegations should be explored during cross-examination rather than raised on the first time during closing argument. Portuondo, 529 U.S. at 78 (Ginsburg, J., dissenting).

In State v. Martin, 171 Wn.2d 521, 534, 252 P.3d 872 (2011), our Supreme Court declined to apply Portuondo to article I, section 22. After a Gunwall[2] analysis, the court held that our state constitution provides more protection from prosecutorial comments on the right to be present and to confrontation than the Sixth Amendment. Martin, 171 Wn.2d at 533. Instead of following the majority in Portuondo, the court adopted Justice Ginsburg's dissent, that "suggestions of tailoring are appropriate during cross-examination, is compatible with the protections provided by article I, section 22." Martin, 171 Wn.2d at 535-36. While the Martin court did not specifically address generic tailoring arguments, the court noted with approval Justice Ginsburg's view that "a comment in closing argument that is 'tied only to the defendant's presence in the courtroom and not to his actual testimony'" violates the right to be present at the trial and confront witnesses. 171 Wn.2d at 535 (quoting Portuondo, 529 U.S. at 77 (Ginsburg, J., dissenting)).

_____

[2] State v. Gunwall, 106 Wn.2d 54, 720 P.2d 808 (1986).

In Berube, this court addressed whether a tailoring argument is always prohibited if the prosecutor makes the argument without first cross-examining on the subject— even when the tailoring argument derives from the defendant's testimony on direct examination. 171 Wn. App. at 116. We concluded that it was not, explaining "[w]hen tailoring is alleged based on the defendant's testimony on direct examination, the argument is a logical attack on the defendant's credibility and does not burden the right to attend or testify." Berube, 171 Wn. App. at 117. In doing so, we reasoned that Martin prohibited "a closing argument that burdens the exercise of constitutional rights without an evidentiary basis and in a fashion preventing the defendant from meaningful response." Berube, 171 Wn. App. at 116-17. While this statement might be dicta, we take this opportunity to clarify and hold that a generic tailoring argument raised only in the prosecution's closing argument, and untethered to the defendant's direct testimony or cross-examination, violates article I, section 22 of the Washington Constitution.

C.

During closing statements, the prosecution suggested that Carte's testimony was tailored:

> [the defense] spent a lot of time trying to suggest that the victim had been violent with Mr. Carte, that she punched him, that she kicked him . . . but even if all of that information were to be true, defense does not claim any self-defense here, so none of those allegations actually matter in this case.

> [The defense gave] you the defendant's side of the story, the side of the story that he gave to you after he had the benefit of having heard all of the evidence in this case and hearing how everyone else testified in conforming his testimony to fit for certain facts, but not others.

The prosecution did not point to any specific portion of Carte's testimony that he conformed "to fit for certain facts." Nor did the prosecution suggest Carte's testimony

No. 83589-1-I/10

differed in any way from statements he made before trial. Instead, the prosecution asserted Carte "conform[ed] his testimony" to the other evidence based only on the benefit of his right to attend his trial and confront the witnesses against him. The prosecution's tailoring argument violated article I, section 22 and was improper.

## D.

The State argues that Carte waived his right to appeal the improper statement because he failed to object at trial and the statement was not flagrant, ill intentioned, and incurable. Carte argues that, because the misconduct infringes on a constitutional right, we should employ the constitutional harmless error standard. We agree with the State.

After error has been established, the defendant must show prejudice. Because Carte did not object at trial, we employ the heightened standard requiring Carte to show (1) no curative instruction could have eliminated the prejudicial effect and (2) there was a substantial likelihood the misconduct led to prejudice that affected the jury verdict. Emery, 174 Wn.2d at 761. "Reviewing courts should focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." Emery, 174 Wn.2d at 762. Prejudice is incurable when the jury's impartiality has been so undermined that a fair trial is no longer possible. Emery, 174 Wn.2d at 762. We review improper remarks "in the context of the entire argument, the issues in the case, the evidence addressed in the argument, and the instructions to the jury." State v. Pierce, 169 Wn. App. 533, 280 P.3d 1158 (2012).

-10-

No. 83589-1-I/11

If Carte objected at trial, the trial judge could have stricken the remark and instructed the jury not to draw any adverse inferences from his testimony. Jurors are presumed to follow the court's instructions. State v. Dye, 178 Wn.2d 541, 556, 309 P.3d 1192 (2013). His failure to object deprived the court of an opportunity to remedy the error. State v. Sakellis, 164 Wn. App. 170, 185, 269 P.3d 1029 (2011).

While Carte correctly suggests prejudice was more likely because the challenged remark was made in the prosecution's rebuttal argument, this alone is insufficient to create incurable prejudice. We look also to the pervasiveness of the misconduct. A single fleeting improper comment is likely curable, while prejudice may be unavoidable when an improper argument is repetitive and thematic. See State v. Brown, 21 Wn. App. 2d 541, 571, 506 P.3d 1258 (2022) ("Any error was fleeting as opposed to pervasive and prejudicial."). The prosecutor's argument here was lengthy, lasting over an hour and about 59 pages of transcript. The improper statement was a single sentence and was never repeated.

We conclude that a timely curative instruction would have abated the potential prejudice, thus Carte cannot show that the error was flagrant, ill intentioned, and incurable.

E.

Carte argues that we should apply the manifest constitutional error standard of RAP 2.5(a)(3), that the error was harmless beyond a reasonable doubt, because the error was a direct comment on Carte's constitutional right rather than a comment that merely "touch[ed] upon [his] constitutional rights." Emery, 174 Wn.2d at 763. Washington courts have long held that prosecutors' improper comments on a

-11-

defendant's exercise of constitutional rights are evaluated under the constitutional harmless error standard. Emery, 174 Wn.2d at 757. But as Division Two of this court recognized in State v. Teas, 10 Wn. App. 2d 111, 122, 447 P.3d 606 (2019), we do not apply the harmless error standard until we conclude that the defendant preserved the error for appeal.

In Teas, during closing arguments, the prosecutor highlighted that DNA evidence placed Teas in the victim's bedroom and suggested that Teas took the stand to testify to address the overwhelming evidence against him. 10 Wn. App. 2d at 119. The prosecutor told the jury "'And so that's why he got on the stand yesterday and came— came up with a story to try and explain away what happened.'" Teas, 10 Wn. App. 2d at 119. Teas did not object to these statements. Division Two of this court agreed with Teas that "it is improper for [a prosecutor] to speculate as to why a defendant testified to infer guilt." Teas, 10 Wn. App. 2d at 123. The State's comment implied that Teas knew he was guilty and only testified to explain the evidence against him. Teas, 10 Wn. App. 2d at 124. But Teas did not object at trial and the court concluded the comments were "not so flagrant and ill intentioned that the resulting prejudice could not be cured with a jury instruction." Teas, 10 Wn. App. 2d at 123.

As Teas recognized, when a defendant fails to object, Washington courts must decide whether the issue has been preserved for appeal before analyzing whether the error was harmless beyond a reasonable doubt. See State v. Espey, 184 Wn. App. 360, 369-70, 336 P.3d 1178 (2014) (applying the "flagrant and ill intentioned" standard before evaluating whether the error was harmless beyond a reasonable doubt). We see no compelling reason to deviate from this precedent.

No. 83589-1-I/13

Because Carte did not object at trial, he waived the issue on appeal unless he can establish that the prosecutor's comment was flagrant, ill intentioned, and incurable. Because he failed to do so, we conclude that Carte has waived this issue for appeal.

III.

Carte next argues that the trial court denied his constitutional right to present a defense when it excluded several out of court statements made by Cooper-McWade as inadmissible hearsay. We disagree.

A.

The Sixth Amendment to the United States Constitution and Washington Constitution article I, section 22 grants criminal defendants the right to present testimony in one's defense. State v. Hudlow, 99 Wn.2d 1, 15-16, 659 P.2d 514 (1983). On appeal, the court reviews a violation of the right to present a defense de novo, but it reviews specific evidentiary rulings for abuse of discretion. State v. Clark, 187 Wn.2d 641, 648-56, 389 P.3d 462 (2017); State v. Jones, 168 Wn.2d 713, 719, 230 P.3d 576 (2010). We engage in a two-step review process to review the trial court's individual evidentiary rulings for an abuse of discretion and then consider de novo the constitutional question of whether these rulings deprived the defendant of their Sixth Amendment right to present a defense. State v. Arndt, 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019).

The trial court must provide the accused with "a fair opportunity" to defend against the government's accusations. Jones, 168 Wn.2d at 719. This right is satisfied through meaningful cross-examination. State v. Darden, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002). But these rights are not absolute. "The accused does not have an

-13-

No. 83589-1-I/14

unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." State v. Lizarraga, 191 Wn. App. 530, 533, 364 P.3d 810 (2015). The right to present a defense is limited by the general rules of evidence. Darden, 145 Wn.2d at 621.

B.

First, we examine the trial court's actions excluding portions of Cooper-McWade's testimony as hearsay. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay is generally inadmissible, even if otherwise relevant, unless it falls within one of several recognized exceptions. ER 802; State v. Garcia, 179 Wn.2d 828, 845, 318 P.3d 266 (2014). Whether an exception to the hearsay rule applies is reviewed for an abuse of discretion. State v. Blake, 172 Wn. App. 515, 535, 298 P.3d 769 (2012). That said, the more fundamental question applicable here—whether a statement is hearsay at all—is reviewed de novo. State v. Heutink, 12 Wn. App. 2d 336, 356, 458 P.3d 796 (2020).

Carte challenges three statements excluded by the trial court. We address each in turn.

1.

First, Carte testified that on November 30, he heard Cooper-McWade tell her child C.W. to "call the police and tell them [Carte] is hitting me." The trial court sustained the prosecution's hearsay objection and instructed the jury to disregard the statement. Carte argues that the statement is not hearsay, but a command that casts doubt on C.W.'s statement in the 911 recording that Carte was hitting Cooper-McWade.

-14-

Carte also contends that the statement did not contain a "factual assertion" and therefore could not have been offered for the truth of such an assertion. We disagree.

A request or command is not hearsay "because the questioner is not asserting a fact or belief." State v. Kelly, 19 Wn. App. 2d 434, 448, 496 P.3d 1222 (2021). Similarly, the hearsay rule "does not forbid the introduction of evidence that a request has been made when the making of the request is significant irrespective of the truth or falsity of its content." Kelly, 19 Wn. App. 2d at 449. Cooper-McWade's statement to C.W. was only helpful to Carte if interpreted as instructing C.W. to wrongfully tell the 911 operator that Carte was assaulting Cooper-McWade. Thus, the statement was not being offered merely to show a request was made, or its effect on the listener. Carte was trying to establish that the accusation of assault was false. Because the relevance of the statement depended on the truth or falsity of its content, it was hearsay. Kelly, 19 Wn. App. 2d at 449.

2.

Second, Carte testified to an occasion when he was exchanging text messages with his ex-wife and Cooper-McWade "threw the bedroom door open" and demanded to know who he "was talking to." Carte contends the trial court erred in sustaining the prosecution's hearsay objection and instructing Carte "not to say what somebody else who is not here in court said." Carte argues that Cooper-McWade's demand was evidence of her jealousy, did not contain a factual assertion, and was instead a question. We disagree.

Again, while questions are generally admissible, they are considered hearsay when making the request is "significant irrespective of the truth or falsity of its content."

-15-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Kelly, 19 Wn. App. 2d at 449. Carte offered the statement to demonstrate Cooper-McWade's jealousy or to imply she was spying on him. Thus, the relevance of the statement depended on its truth or falsity—revealing Cooper-McWade's motive. The statement was hearsay.

3.

Third, Carte testified that Cooper-McWade asked him "not to call the police" after she kicked him on October 8. The trial court sustained the prosecution's objection as hearsay. Carte argues that the statement was a request and lacks factual content that could be offered for the truth. We disagree. Intrinsic in the alleged request was a contested factual assertion that Cooper-McWade had assaulted Carte. Because the relevance of Cooper-McWade's request to Carte depended on the truth of the assertion, it was hearsay. Kelly, 19 Wn. App. 2d at 449.

C.

The second step of our analysis under Arndt requires that we examine whether the reasoned exclusion of the hearsay testimony resulted in a violation of Carte's right to present a defense. It did not.

In Arndt, the trial court limited the testimony of the defendant's expert witness. 194 Wn.2d at 812. The defendant argued that the exclusion denied their right to present a defense. Arndt, 194 Wn.2d at 812. The Supreme Court upheld the trial court's ruling and noted the trial court has a gatekeeping function under the rules of evidence. Arndt, 194 Wn.2d at 812. Because the defendant could advance their defense theory, and the exclusion of evidence did not eliminate the defendant's entire defense, the exclusion of such evidence did not violate the defendant's Sixth

Amendment right to present a defense. Arndt, 194 Wn.2d at 814. "Accordingly, when the defendant has an opportunity to present his theory of the case, the exclusion of some aspects of the defendant's proffered evidence will not amount to a violation of the defendant's constitutional rights." State v. Ritchie, 24 Wn. App. 2d 618, 635, 520 P.3d 1105 (2022).

1.

Carte argues that Cooper-McWade's request to C.W. to "call the police and tell them [Carte] is hitting [her]" is direct evidence that her allegations were false. And that the statement casts doubt on her credibility and recontextualizes the recorded 911 call the jury heard. But Cooper-McWade's statement was at best ambiguous. Cooper-McWade also testified that she was, in fact, assaulted several times that evening. Thus, the evidence could just as easily be interpreted as Cooper-McWade asking C.W. to report what was actually happening. The jury otherwise rejected Carte's interpretation of events on November 30, and it is unlikely that excluding this statement would affect the jury verdict. Carte was able to put on a defense and testify to his version of events.

2.

Carte argues that excluding Cooper-McWade's demand of who he was talking to interfered with his ability to argue that she was extremely jealous and controlling. But even without the excluded statement, Carte was able to amply present his theory.

Carte testified without objection that he was speaking with his ex-wife when Cooper-McWade entered the room. Defense counsel then asked a question that allowed Carte to explain that Cooper-McWade was spying on him and "reading my conversations." Moreover, accusations that Cooper-McWade was jealous, erratic,

-17-

suspicious, and intrusive pervaded Carte's testimony. Portraying Cooper-McWade as violently jealous was a key aspect of Carte's defense theory, which his trial counsel had no difficulty presenting to the jury. It is implausible that the single excluded statement affected the verdict.

3.

Carte argues that excluding Cooper-McWade's statement that he not call the police interfered with his ability to argue that Cooper-McWade was herself abusive. But just after the trial court sustained the objection, Carte testified that Cooper-McWade was "very concerned" about the potential consequences of assaulting him. More importantly, Carte described the alleged assault himself during direct examination and got a chance to cross-examine Cooper-McWade on the subject as well. Again, it is implausible that admitting the excluded statement could have changed the verdict.

The exclusion of the three challenged statements did not deprive Carte of his ability to present a defense.

IV.

Carte next argues that the trial court erred in admitting Cooper-McWade's statement to responding police officers on November 30 as an excited utterance. We disagree.

A.

In a pretrial motion the State moved to admit Cooper-McWade's statement to Deputy Damerow on November 30. The prosecutor stated that police officers arrived at Cooper-McWade's house about 12 minutes after C.W.'s 911 call. After kicking in the

front door, they found Cooper-McWade and C.W. hiding in a closet. Cooper-McWade then made several statements to Damerow describing Carte's assault.

Cooper-McWade told Damerow that Carte had become enraged after finding her on the phone with Argueta. When she refused to unlock her phone for him, Carte strangled her, dragged her around the apartment, and threatened to kill her. Carte then left and Cooper-McWade hid in a closet with C.W. until police arrived. Cooper-McWade believed that Carte was capable of killing her but "hoped that he wouldn't because she's a single mom." Damerow observed that Cooper-McWade was "afraid and crying" during the conversation.

Carte objected, arguing the record was unclear as to whether Cooper-McWade was sufficiently agitated for her statements to qualify as excited utterances. The trial court overruled Carte's objection, concluding that the statements were spontaneous:

> The key . . . is spontaneity . . . there was a very short time period between the time of the [911] call and the time that the officers had the conversation with the complaining witness.
>     This means that the witness would not have had time to fabricate or make up some kind of report. . . .
>     [I]f the issue was one of assault, strangulation, whatever she is claiming happened, those would be startling events. The statements made to the officer would be made while the declarant was under the stress or excitement caused by . . . those events, and it would therefore not be objectionable as hearsay.

At trial, Damerow testified that Cooper-McWade appeared "mostly calm" when police first arrived but started crying when officers began speaking with her. Damerow observed that Cooper-McWade was "shaking" while talking to him, and that she was "stutter[ing]." Damerow recalled it being "very obvious . . . that [Cooper-McWade] was scared . . . and very upset."

No. 83589-1-I/20

Carte renewed his objection, arguing that Cooper-McWade's statements did not qualify as excited utterances. The trial court declined to revisit its pretrial ruling.

B.

While typically inadmissible, hearsay can be offered at trial when authorized by a court rule or statute. ER 802. One recognized exception is found in ER 803(a)(2), which allows courts to admit "statement[s] relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Courts reason that statements made while under the stress of an exciting event "could not be the result of fabrication, intervening actions, or the exercise of choice or judgment." State v. Rodriquez, 187 Wn. App. 922, 939, 352 P.3d 200 (2015). In a sense, excited utterances are "an event speaking through the person, as distinguished from a person merely narrating the details of an event." State v. Pugh, 167 Wn.2d 825, 837, 225 P.3d 892 (2009).

The party seeking to admit a statement as an excited utterance must show that (1) a startling event or condition occurred, (2) the declarant made the statement while under the stress of excitement of the startling event or condition, and (3) the statement related to the startling event or condition. State v. Ohlson, 162 Wn.2d 1, 8, 168 P.3d 1273 (2007).

The court may consider circumstantial evidence when assessing the statements, including "the declarant's behavior, appearance, and condition; appraisals of the declarant by others; and the circumstances under which the statement is made." Rodriquez, 187 Wn. App. at 938. A statement is more likely to qualify as an excited utterance if the declarant is agitated, emotional, frantic, or "visibly upset." State v.

-20-

<u>Davis</u>, 116 Wn. App. 81, 86, 64 P.3d 661 (2003). Yet a "state of nervousness or anxiety" by itself is insufficient. <u>Burmeister v. State Farm Ins. Co.</u>, 92 Wn. App. 359, 370, 966 P.2d 921 (1998). We review the court's decision to admit a statement as an excited utterance for an abuse of discretion. <u>DeVogel v. Padilla</u>, 22 Wn. App. 2d 39, 58, 509 P.3d 832 (2022).

C.

The first and third <u>Ohlson</u> factors are easily satisfied. The State's pretrial offer of proof revealed that C.W. called 911 to report that Cooper-McWade was being actively assaulted, evidence of which could be heard in the background of the recordings. This is a startling event or condition. Being beaten and strangled by another person is certainly a stressful event. It cannot be seriously disputed that Cooper-McWade's statement concerned the startling event.

The second <u>Ohlson</u> factor is also met. Officers arrived at Cooper-McWade's house 12 minutes after C.W.'s called 911. Even after forcing entry, Cooper-McWade was contacted within about 20 minutes of the event. A 20-minute delay is well within the time frame recognized for admission of excited utterances where there is continuing stress. <u>See, e.g.</u>, <u>State v. Thomas</u>, 150 Wn.2d 821, 855, 83 P.3d 970 (2004) (1.5 hours after murder); <u>State v. Strauss</u>, 119 Wn.2d 401, 416-17, 832 P.2d 78 (1992) (3.5 hours after rape of child). Thus, the trial court reasonably concluded that Cooper-McWade could still have been under the stress of the assault after the "very short time period."

Cooper-McWade was also still hiding in the closet when the police arrived, which weighs in favor of admission. <u>See</u> <u>State v. Guizzotti</u>, 60 Wn. App. 289, 295-96, 803 P.2d 808 (1991) (statement admissible as excited utterance despite 7-hour delay

-21-

because the victim had been hiding and "thought the defendant was looking for her"). Deputy Damerow's observation that Cooper-McWade was "afraid," "crying," "shaking," and "stutter[ing]" also suggested she was still affected by the assault.

Carte relies on Damerow's testimony that Cooper-McWade at first seemed calm on contact. While this fact weighs against admission, alone, it does not establish an abuse of discretion. "The crucial question with regard to excited utterances is whether the statement was made while the declarant was still under the influence of the event to the extent that his statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment." State v. Sellers, 39 Wn. App. 799, 804, 695 P.2d 1014 (1985). Because Cooper-McWade's statement was made to the police shortly after they broke down her door to find her still hiding, and they arrived only 12 minutes after C.W. called 911, the court reasonably concluded that Cooper-McWade was still under the stress of the altercation with Carte. The trial court did not abuse its discretion.

V.

Finally, Carte argues that the cumulative effect of the prosecutor's and trial court's errors deprived him of a fair trial. We disagree.

The cumulative error doctrine requires reversal when a defendant establishes that multiple accrued errors rendered a trial "fundamentally unfair," even if these errors were individually harmless. Emery, 174 Wn.2d at 766. The doctrine applies in "instances when there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial." State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000).

No. 83589-1-I/23

Here, Carte waived his objection to the prosecutorial misconduct claim thus it is not error. He also failed to show that the court improperly included Cooper-McWade's statement as an excited utterance. And finally, the trial court did not error in excluding the challenged hearsay.

Affirmed.

_____Mann, J._____

WE CONCUR:

_____Chung, J._____                    _____Dwyer, J._____